## A96A2202. MITCHELL v. THE STATE.
### (482 SE2d 419)

BEASLEY, Judge.

Appellant "Jeff" Mitchell, his brother Stephen Mitchell, and Kyle Spell were charged with the malice and felony murder of Danny Hucks and with possession of a firearm during the commission of a crime. The Mitchell brothers were tried jointly. The jury found Stephen guilty of voluntary manslaughter, felony murder, and possession of a firearm, and the court sentenced him for the latter two offenses after merging voluntary manslaughter with felony murder. See *Mitchell v. State*, 266 Ga. 197 (467 SE2d 503) (1996). Appellant Jeff was convicted and sentenced for voluntary manslaughter (OCGA § 16-5-2) and possession of a firearm during the commission of a crime (OCGA § 16-11-106). He appeals after the denial of his motion for new trial.

The evidence at trial showed the following: Stephen and Hucks were involved with the same woman, Melissa Clark, for a number of years before the homicide. Hucks was extremely jealous and physically abused her. Although Clark broke off their relationship, his jealousy continued, as did his abuse toward Clark and her friends. After Hucks went to prison, Clark moved in with Stephen. When Hucks was released, he began making harassing telephone calls and continually threatened to kill them.

According to Stephen, on the night of the killing, Hucks spoke to him on the telephone and said that if Stephen did not meet him to fight, he would come and kill both Stephen and Clark. Stephen agreed to meet Hucks at an area known as the "sandpits." Hucks told one of his friends that he was going to fight Stephen and kill some boys. Jeff and Spell accompanied Stephen to the site. Spell suggested to Stephen that they purchase shells for Spell's shotgun, and while en route in Spell's truck, Jeff purchased them.

At the sandpits, Hucks appeared with a group of his friends. Jeff stated he did not want any part of it and that they should let his brother and Hucks fight it out. Hucks initiated the fighting by running over to Spell's truck, striking Stephen and Jeff with a large stick and smashing the windshield of Spell's truck. He then said, "It ain't worth going back to the penitentiary for; . . . let's go," and started walking back toward his truck. Stephen retrieved the shotgun from the truck. As Hucks was returning to his truck, Stephen fired at Hucks, wounding him in the shoulder (the first assault). Stephen, Jeff, and Spell began beating Hucks with sticks. Jeff and Spell walked off but Stephen kept up the beating for a short time. Spell reloaded the shotgun and Stephen returned to Hucks, lowered the shotgun, and fired when the shotgun was in Hucks' mouth, blowing off most of his head (the second assault). Jeff was 30 to 50 feet away.

They loaded the body on Spell's truck and left, with Jeff driving. He assisted his brother in disposing of Hucks' body.

1. Jeff challenges the sufficiency of the evidence to support his convictions. To decide, we must first examine the opinion in his brother's case. In Stephen Mitchell's appeal, supra at 266 Ga. 202-204 (2), the Court reviewed evidence showing that the first assault on Hucks was not fatal and did not contribute to his death. The Court could not determine from the record whether the jury used the same assault as the basis for its voluntary manslaughter and felony murder convictions. Therefore, it had to assume that the jury's conviction of felony murder was based on the second assault. Holding that the jury's verdict of voluntary manslaughter meant that it found the second assault to be mitigated by provocation and passion, the Court reversed Stephen's felony murder conviction on the ground that where a jury returns a verdict for voluntary manslaughter, it cannot also return a verdict of felony murder based on the same aggravated assault. *Edge v. State*, 261 Ga. 865 (2) (414 SE2d 463) (1992). After determining that the evidence was sufficient to support voluntary manslaughter, the Court remanded the case to the trial court for resentencing. *Mitchell*, supra at 204 (3).

The first question is whether the evidence was sufficient to authorize a jury to find that appellant was a party to the crime of voluntary manslaughter. "Every person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime." OCGA § 16-2-20 (a). OCGA § 16-2-20 (b) (3) provides that a person is concerned if he "[i]ntentionally aids or abets in the commission of the crime."

Construed most favorably to the verdict, *Bedingfield v. State*, 219 Ga. App. 248 (1) (464 SE2d 653) (1995), the evidence authorized the jury to find that both Stephen and Hucks were in possession of deadly weapons (stick and gun) at the sandpits, and they each intended to fight with those weapons, and that they were thus engaged in "combat by agreement." OCGA § 16-3-21 (b) (3). See *Massey v. State*, 251 Ga. 515, 516 (1) (307 SE2d 489) (1983); see also *Parker v. State*, 218 Ga. 654, 657 (4) (129 SE2d 850) (1963); *Askins v. State*, 210 Ga. 532, 536 (3) (81 SE2d 471) (1954) (rock and knife); *Strickland v. State*, 137 Ga. App. 419 (1) (224 SE2d 87) (1976); *Sanders v. State*, 26 Ga. App. 475 (2) (106 SE 314) (1921). The court charged on the legal effect of combat by agreement on the defense of justification. "Participation in mutual combat by providing a weapon to one of the other parties is sufficient to support a conviction for voluntary manslaughter as a party to the crime under OCGA § 16-2-20 (b) (3)." *Steele v. State*, 216 Ga. App. 276, 277 (454 SE2d 590) (1995), disapproved on other grounds *Kennebrew v. State*, 267 Ga. 400, 404, n. 2 (480 SE2d 1) (1996). It follows that providing the ammunition for

a weapon to a combatant, thereby enhancing the weapon's lethal capacity, is sufficient to support a voluntary manslaughter conviction. The evidence showed that Jeff did just that. He was more involved than appellant Young in *Bullard v. State*, 263 Ga. 682, 685 (1) (436 SE2d 647) (1993). Although both she and Jeff Mitchell were present at the homicide and participated in concealing the death of another, she did no more and thus could not be convicted as a party to the homicide. Jeff, on the other hand, had made the ammunition available and did nothing to stop its use. This is more than mere approval, which also is not sufficient. "Criminal intent may be inferred from conduct before, during, and after the commission of the crime." *Sands v. State*, 262 Ga. 367, 368 (418 SE2d 55) (1992). See also *Hildebrand v. State,* 209 Ga. App. 507, 511 (4) (433 SE2d 443) (1993); *Thaxton v. State*, 184 Ga. App. 779 (1) (362 SE2d 510) (1987). The court cautioned the jury on the insufficiency of "mere presence" and "mere association" and required a finding of aiding and abetting in actual perpetuation or participation in the criminal endeavor.

Where a party has possessed a firearm during the commission of a felony, an accomplice who is concerned in the commission of the crime under OCGA § 16-2-20 is likewise guilty of both offenses. *Howze v. State*, 201 Ga. App. 96, 97 (410 SE2d 323) (1991). The evidence was sufficient to support Jeff's conviction of this offense also.

2. Error is also claimed in the court's jury charge on reasonable doubt.

In explaining this principle, the court charged that "[i]f the State fails to prove the defendants' guilt beyond a reasonable doubt, it would be your duty to acquit the Defendants. . . . If . . . you think there's a real possibility that they are not guilty, then you must give them the benefit of that doubt and find them not guilty." In later instructing the jury on possible verdicts, the court charged that, "after considering the evidence in this case if you should find or believe beyond a reasonable doubt that the defendants are guilty of the charges made in the bill of indictment against the defendants . . . , you are *authorized* to find the defendants guilty of those . . . charges. If you do not believe that the evidence proves beyond a reasonable doubt the defendants are guilty of any of the offenses charged in the bill of indictment, then you're *authorized* to find the defendants not guilty or you can find the defendants guilty of one charge, not guilty on the other charge; you can find them guilty of voluntary manslaughter, murder, or malice murder, whichever your verdict may be." (Emphases supplied.) Appellant contends that the latter part of the charge was erroneous because the jury is *required* to acquit if it does not find proof beyond a reasonable doubt.

"The charge to the jury is to be taken as a whole and not out of context when making determinations as to correctness of same."

*Bowles v. State*, 168 Ga. App. 763, 765 (4) (310 SE2d 250) (1983). " 'Where an excerpt from a charge isolated from its context appears to be confusing, but, when construed with the remainder of the charge, is plain and explicit, a ground of a motion for new trial that segregates the excerpt from the whole charge and attacks it as misleading or confusing is without merit.' [Cits.]" *Geter v. State*, 219 Ga. 125, 134 (2) (132 SE2d 30) (1963). "Further, ' "(i)t is not necessary in considering a charge to assume a possible adverse construction, but a charge that is sufficiently clear to be understood by jurors of ordinary understanding is all that is required. [Cit.]" [Cit.]' [Cit.]" *French v. State*, 199 Ga. App. 873, 874 (2) (406 SE2d 526) (1991). Taken as a whole, the court's charge would not have been understood by jurors of ordinary understanding to mean that they were merely authorized but not required to acquit appellant if they did not find proof of his guilt beyond a reasonable doubt.

*Judgment affirmed. Birdsong, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED FEBRUARY 17, 1997 —
RECONSIDERATION DENIED MARCH 3, 1997 — ▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*Stanley C. House*, for appellant.
Charles J. Mitchell, *pro se*.
*Daniel J. Craig, District Attorney, Charles R. Sheppard, Assistant District Attorney*, for appellee.